CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ZACHARY M. GLIMCHER (CABN 308053)
Special Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3701
    Zachary.Glimcher@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JAMES PAUL WALSH,<br><br>    Defendant. | NO. 4:24-CR-00487-JSW<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date:    February 10, 2026<br>Time:    1:00 p.m.<br><br>Judge:    Hon. Jeffrey S. White |

1

## INTRODUCTION

In March of 2024, Defendant James Paul Walsh was arrested after attempting to meet what he believed was a 13-year-old girl to perform sexual acts on her. After his arrest, the defendant was found to possess over 900 images containing child sexual abuse material (CSAM) on various electronic devices. The defendant pled guilty to one count of Possession of Child Pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2).

For the reasons set forth below, the government recommends that the Court sentence the defendant to 60 months imprisonment, a fine of $25,000.00, and 10 years of supervised release.

## BACKGROUND

**A. Offense Conduct**

**1. Defendant Arrested After Attempting to Meet a 13-Year-Old Girl to Perform Sexual Acts on Her**

In late February 2024, the defendant posted on the Whisper platform, "Any girls ditching school today?" PSR ¶11. As part of a chat operation conducted by the Silicon Valley Internet Crimes Against Children (ICAC) Task Force, an undercover deputy ("UC") posing as a 13-year-old girl responded, "Yepp." *Id.* The defendant and the UC soon transferred the conversation over to text messaging, where the defendant asked for a picture of the girl. PSR ¶12. The UC sent a computer-generated image of a girl purporting to be the minor, "Sami." *Id*.

Knowing that Sami was 13, text messages between them demonstrate the defendant's interest in meeting her for sexual gratification. They chatted back and forth, the defendant suggested taking Sami to the mall to buy her some new outfits she could model for him, and Sami responding, "Hehe u wana c me in sexy cloths evn tho I'm 13?" PSR ¶13. Walsh continued to escalate the conversation, texting, "i think if I saw you doing a fashion show in sexy clothes I would want to put my hands on you." He continued, saying, "i want to touch you," "and put you on my lap," "and take your clothes off," "and kiss and lick you all over," and "in between your legs." *Id*. And both Sami and the defendant asked each other, "…are you fr?" *Id*.

On March 1, 2024, having agreed to meet in person, the defendant went to the meeting place,

2

Govt Sentencing Memo
24-487-JSW

texted Sami (the UC) he had arrived, and he was subsequently arrested. PSR ¶14. Walnut Creek Police Department detectives interviewed the defendant, and he admitted he was there to meet up with who he believed was a 13-year-old girl he had been chatting with online. *Id*. He further told police he intended to pick Sami up, take her back to his house, and then he did not know what they would do. *Id*. The defendant further admitted that while he had never been with someone underage, he got excited and carried away. *Id.*

The defendant gave police his two mobile phones, provided the passcodes, and further admitted that there was CSAM on one of them that he purchased a few days prior. PSR ¶ 15. The defendant said there was additional CSAM on his laptop in his bedroom at his home. *Id.* He explained that he had been using drugs regularly for the past few weeks, primarily methamphetamine, and he was currently feeling the effects of it. *Id.* Police asked the defendant if he would be willing to write an apology letter to Sami and her family, and he agreed. *Id*.

**The defendant possessed CSAM on his phone and laptop**

The defendant's devices were subsequently searched, the data analyzed, and the CSAM described and catalogued. PSR ¶ 18. There were over 900 images recovered on the defendant's devices, and as described in the PSR and admitted to by the defendant, the victims ranged from young teen and pre-pubescent girls to babies. *Id.* In some of the videos, the defendant's face can be seen in the reflection on the screen depicting the video of a pre-pubescent girl pull her pants down to expose her vagina, after which an adult male can be seen touching it with his fingers. *Id.* Other videos recovered depict pre-pubescent girls performing oral sex on adult males, as well as engaging in sexual intercourse with adult males. *Id*.

**The defendant purchased and received CSAM from more than one source**

In addition to the CSAM recovered, there was a significant amount of chats between the defendant, under username, "Toilet Tom," and another user on Telegram, during which the defendant paid for and received CSAM. The chats covered about a week of time, and they show the CSAM distributor to have engaged in exploitative tactics, causing the defendant to pay more and more to receive the CSAM. PSR ¶ 19-21. At one point, the defendant asked the other user to provide,

3

Govt Sentencing Memo
24-487-JSW

"extreme/dark stuff?" *Id*. at 21. With another user on a different platform, the defendant said he is looking for minors, from ages 10 to 16. *Id*. at 22.

Additional forensic examination of the defendant's phone revealed a Google search history including search terms such as, "where is child porn being traded," "finding cp on telegram," and "perfect teen pussy compilation." PSR ¶23.

**B.  Procedural History**

On September 5, 2024, a federal grand jury returned a one-count indictment charging the defendant with possession of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2)**.** PSR ¶ 1.

On July 15, 2025, the defendant pled guilty to the sole count in the Indictment via a written plea agreement.  PSR ¶¶ 2-3.  Sentencing is currently scheduled before this Court for February 10, 2026.  *Id.*

**DISCUSSION**

**A.  Legal Standard**

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process.  *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007).  The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991.  In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include (among other factors):

> (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)   the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (3)   the need for the sentence imposed to afford adequate deterrence to criminal conduct;
>
> (4)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

4

Govt Sentencing Memo
24-487-JSW

**B. Sentencing Guidelines Calculation**

As set forth in the Plea Agreement, the Sentencing Guidelines calculation for the defendant's offense level is as follows:

| | |
|---|---|
| **COUNT 1:  BASE OFFENSE LEVEL** (U.S.S.G. § 2G2.2(a)(1)) | 18 |
| **SPECIFIC OFFENSE CHARACTERISTICS** | |
| **The material involved a prepubescent minor** (U.S.S.G. § 2G2.2(b)(2)) | +2 |
| **The material involved sadistic conduct and the sexual abuse or exploitation of an infant or toddler** (U.S.S.G. §§ 2G2.2(b)(4)(B) and (b)(4)(B)) | +4 |
| **The defendant possessed images and videos of child pornography on and by using electronic devices, including a cellphone and computer. USSG §2G2.2(b)(6).** | +2 |
| **The offense involved 600 or more images** (U.S.S.G. § 2G2.2(b)(7)(D)) | +5 |
| **Adjusted Offense Level** | 31 |
| **Acceptance of responsibility** (U.S.S.G. § 3E1.1) | -3 |
| **Total Adjusted Offense Level** | **28** |

The Government agrees with the PSR that the defendant's Criminal History Category (CHC) is I. PSR ¶53.  With a total offense level of 28 and a CHC I, the Guideline range associated is 78-97 months. The Government agrees that this range is supported by the facts of the case; however, for reasons explained below, the government recommends a custodial sentence of 60 months, in concurrence with the terms of the Plea Agreement.

**C. The Government Recommends 60 Months of Imprisonment Based on the 18 U.S.C. § 3553(a) Factors**

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a **custodial sentence of 60 months** to be followed by a 10-year term of supervised release. Consistent with 18 U.S.C. § 3553(a), such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offenses, to provide just

5

Govt Sentencing Memo
24-487-JSW

punishment and protect the community, and to account for both the significant aggravating and mitigating factors present in this case.

The defendant was convicted of possession of CSAM, but his heinous conduct did not end with mere possession. Apparently unsatisfied by viewing this material, the defendant "got excited" to act on his urges by attempting to meet a 13-year-old girl to perform sexual acts on her. PSR ¶ 14. The chats demonstrate that the defendant was as interested in making sure Sami knew he wanted to do sexual things to her as she was about making sure the defendant was fully aware and okay with her being 13 years old.

After chatting with who he believed was a real 13-year-old girl, the defendant's week-long bender involving methamphetamine and compulsively seeking out CSAM could have culminated with a life-changing, hands-on victimization of a minor, in addition to the minors he victimized through buying, receiving, and consuming content depicting the sexual abuse of other minors. Fortunately for the community, this was a near miss. The defendant's intentions and actions were base and primal and aggravate sentencing considerations.

The defendant possessed over 900 images containing CSAM, some of which included sexual and violent abuse against minor children, toddlers, and infants.  The victim impact statements included in the PSR demonstrate why possession of CSAM is so devastating to victims.  PSR ¶¶ 26-30.  The knowledge that this material is distributed and downloaded online causes victims of child sexual abuse to live with the constant fear that they will be recognized in public by people who have seen these videos and images. And although the defendant did not personally produce CSAM, participating in the market for CSAM further contributes to the sexual exploitation of children. Consistent with 18 U.S.C. § 3553(a)(3), a considerable custodial sentence is necessary to afford adequate deterrence both specifically to the defendant and generally to those who also contribute to the sexual exploitation of children.

Consistent with these victims' statements, the Supreme Court has acknowledged that child pornography "produces concrete and devastating harms for real, identifiable victims." *Paroline v. United States*, 572 U.S. 434, 457–58 (2014).  Furthermore, as Congress has recognized, "child pornography permanently records the victim's abuse, and its continued existence causes the child

Govt Sentencing Memo
24-487-JSW

victims of sexual abuse continuing harm by haunting those children in future years." *United States v. Marigny*, No. 20-MJ-70755-MAG-BLF, 2020 WL 4260622, at *3 (N.D. Cal. July 24, 2020) (citing Child Pornography Prevention Act of 1996, Pub. L. No. 104-208 § 121, 110 Stat. at 3009, 3009-27 (1996)). Indeed, "[i]t is common ground that the victim suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured." *Paroline*, 572 U.S. at 457. Defendants who possess child pornography "play[ ] a part in sustaining and aggravating this tragedy." *Id.* For many victims, given that "child pornography is now traded with ease on the Internet," knowledge of wide circulation "renew[s] the victim's trauma and ma[kes] it difficult for her to recover from her abuse." *Id.* at 439–41. "In a sense, every viewing of child pornography is a repetition of the victim's abuse." *Id.* at 457. Whether he intentionally caused this harm or not, the defendant's possession of CSAM proliferated the abuse of many victims in this case, as detailed in their victim impact statements and summarized by Probation in the PSR.

The PSR also sets forth at least one mitigating factor, which the government acknowledges and has accounted for in its sentencing recommendation. After the defendant was detained by police, he *came to* and acknowledged his egregious conduct for what it was. He largely admitted to police what he was there to do, and he admitted to downloading CSAM. PSR ¶15. He consented to searches of his devices, and still under the impression there was a real potential victim, the defendant agreed to write a letter of apology. *See id.* These actions are mitigating and weighed considerably in the government's agreement to recommend a below-Guidelines sentence.

In the best light, the defendant's past childhood trauma and fall into methamphetamine addiction and abuse may provide some explanation for his actions. The defendant has no other significant criminal history, and on paper, he was a success in many of the things he took on in life. Methamphetamine has now twice been the beginning of his downfall. The first time, his self-reported meth abuse resulted in the forfeiture of the most important, self-actualizing, identity-defining purposes in life: family, fatherhood, and a livelihood. In the face of those things, the government is concerned about an apparently easily accessible drug explaining why the defendant threw his life away twice now. The first time,

7

Govt Sentencing Memo
24-487-JSW

methamphetamine abuse cost the defendant his family and his career. PSR ¶ 62. And now, the second time, it will cost him his freedom.

A custodial sentence of 60 months—which represents a downward variance from the Guidelines range agreed upon in the parties' Plea Agreement—is sufficient, but not greater than necessary, taking into account the factors set forth in 18 U.S.C. § 3553(a).  As described above, the defendant's crimes were despicable and serious, and they merit a lengthy sentence.  A sentence of 60 months would also serve the general and specific deterrence goals of § 3553 by signaling to potential offenders that the possession of CSAM will not be tolerated. And such a sentence would signal to survivors of such exploitation that the criminal justice system takes their concerns about the continued distribution of explicit material depicting their abuse seriously.

<b>CONCLUSION</b>

For the foregoing reasons, with full consideration of the Sentencing Guidelines, the goals of sentencing, and the factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court sentence the defendant to a sentence of **60 months of imprisonment,** to be followed by 10 years of supervised release (with the conditions recommended by the U.S. Probation Office), a $25,000.00 fine, a $100 special assessment, an additional special assessment of $5,000 under 18 U.S.C. § 3014, and an additional assessment for an offense for trafficking in child pornography of up to $17,000 under 18 U.S.C. § 2259A(a)(1), forfeiture as detailed in the plea agreement, and restitution.

DATED: February 1, 2026

_/s/_____
ZACHARY M. GLIMCHER
Special Assistant United States Attorney

Govt Sentencing Memo
24-487-JSW